UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID HARRIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 13-cv-8584 |
| | ) |
| KARL KRUGER; MICHAEL CHERNIK; | ) Judge John W. Darrah |
| JORGE CERDA; CORY PETRACCO; | ) |
| PAUL PERAINO; CITY OF CHICAGO; | ) |
| and UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff David Harris filed a Second Amended Complaint ("SAC") alleging various claims against the United States of America (the "Government"); the City of Chicago (the "City"); and Chicago Police Officers: Karl Kruger, Michael Chernik, Jorge Cerda, Cory Petracco, and Paul Peraino (collectively, "Defendant Officers"). The Government has moved to dismiss all claims against it, with the exception of Harris's malicious prosecution and intentional infliction of emotional distress claims. The City and Defendant Officers have moved to dismiss all claims against them.

### **BACKGROUND**

For purposes of a motion to dismiss, the following allegations within Harris's SAC are accepted as true. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 761-62 (7th Cir. 2010.) Harris is an Illinois resident. (SAC ¶ 9.) At all times relevant to this action, Kruger, Chernik, Cerda, Petracco, and Peraino were police officers employed by the City. (SAC ¶ 10.)

On October 30, 2009, Agent Larissa Baccus of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") initiated an undercover drug purchase. (SAC ¶ 13.) The purchase was part of a larger undercover operation, including ATF agents and officers from the Illinois State Police and Chicago Police Department. (SAC ¶ 14.) The ATF claimed to have captured audio and video evidence showing Harris was the individual who sold the drugs to Baccus on October 30, 2009. (SAC ¶ 15.) However, the audio and video demonstrate that Harris was not involved with the transaction. (SAC ¶ 20.)

On October 27, 2010, Harris was charged with two counts of delivery of a controlled substance based on Baccus's October 30, 2009 drug purchase. (SAC ¶ 22.) Both of the charges were dismissed, but Harris was detained for approximately thirteen months pending resolution of the charges. (SAC ¶ 28.) On October 25, 2012, Harris filed an administrative claim with the ATF, pursuant to the Federal Tort Claims Act ("FTCA"). (SAC ¶ 29.) The Defendant Officers were made aware of Harris's administrative claim. (SAC ¶ 30.)

On January 31, 2013, Harris was at a friend's house when he was arrested by the Defendant Officers. (SAC ¶ 31.) At least one of the Defendant Officers transported Harris to a police station, where he was placed in a holding room for approximately five hours. (SAC ¶ 32.) Harris was never questioned or charged with a crime. (SAC ¶ 33.) When he inquired why he was detained, one or more of the Defendant Officers told Harris that a gun and narcotics were found in his friend's home. (*Id*.) However, the Defendant Officers never found a gun or narcotics at Harris's friend's home. (SAC ¶ 34.)

On March 8, 2013, Harris again was arrested by one or more of the Defendant Officers at the same friend's home. (SAC ¶ 35.) Despite lacking a warrant to search the home, one or more Defendant Officers used a shotgun to gain entry and then used flash grenades. (SAC ¶¶ 35-36.)

2

Upon arresting Harris, one or more of the Defendant Officers harassed or taunted Harris about his pending administrative claim with the ATF. (SAC ¶ 37.)

## LEGAL STANDARD

Rule 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility exists when the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rather, the complaint must provide a defendant "with 'fair notice' of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2) and *Twombly*, 550 U.S. at 555). When ruling on a motion to dismiss, the court accepts all well-pleaded factual allegations as true and construes all reasonable inferences in favor of the plaintiff. *Tamayo*, 526 F.3d at 1081.

## ANALYSIS

Harris's SAC contains a section entitled "Legal Claims," comprising twenty-three paragraphs and alleging various claims against "one or more of the Defendants." Moreover, Harris asserts that the claims are brought against the Government pursuant to the FTCA and against the City and Defendant Officers pursuant to 42 U.S.C. § 1983. (SAC ¶ 39.) As stated above, the Government has filed its own Motion to Dismiss (the "Government's Motion"), distinct from the Motion to Dismiss filed by the City and Defendant Officers (the "Chicago Motion"). Therefore, the sufficiency of the SAC must be tested by each Motion separately.

*The Government's Motion*

First, the Government argues that all claims in the SAC alleging constitutional violations must be dismissed with respect to the Government. (Dkt. No. 85 ¶ 3, 8.) Constitutional tort claims are not cognizable under the FTCA. *Fed. Deposit Ins. Co. v. Meyer*, 510 U.S. 471, 477 (1994). Indeed, Harris concedes that he cannot assert constitutional claims under the FTCA. (Dkt. No. 89 at 2.) Therefore, all constitutional claims – specifically those in paragraphs 40 ("deprived [Harris] of his constitutional rights"), 41 ("failure to intervene to prevent the violation of Plaintiff's constitutional rights"), 44 (false arrest), 45 ("unconstitutional searches and seizures"), 46 ("excessive force in violation of the Fourth Amendment"), 47 ("violated [Harris]'s rights to due process"), 48 ("arrested and imprisoned . . . [without] probable cause for doing so"), 50 ("acted in concert to deprive [Harris] of his constitutional rights"), 52 ("violation of [Harris]'s rights as secured by the Illinois Constitution") – must be dismissed.

Next, the Government argues that the FTCA expressly reserves immunity for any claims arising out of libel or slander. (Dkt. No. 85 ¶ 9); *see also* 28 U.S.C. 2680(h). Therefore, the Government argues that the claim in paragraph 43 of the SAC ("One or more of the Defendants accused [Harris] of criminal activity knowing that those accusations were without probable cause or legal justification.") should be dismissed to the extent it alleges libel or slander. Harris argues that this claim "relates a plausible account" and puts the Government "on notice of the claims against [it] . . . ." (Dkt. No. 89 at 5.) This argument, however, does not rebut the clear exception provided in 28 U.S.C. 2680(h). Accordingly, the claim contained in paragraph 43 of the SAC is dismissed to the extent it alleges libel or slander against the Government.

The Government also argues that the claims in paragraphs 49 and 51 are mere "naked assertion[s]" of wrongdoing that do not meet the pleading standards set forth in *Twombly* and

*Iqbal*. (Dkt. No. 85 ¶¶ 7-8.) Paragraph 49 alleges that "Defendants' conduct . . . constituted unjustified and offensive physical contact." Paragraph 51 alleges that "Defendants, acting in concert with other known and unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means." Harris argues that conspiracy[1] need only "indicate the parties, the general purpose, and approximate date of the agreement to form a conspiracy so that the defendant has notice of the charges against him." (Dkt. No. 89 at 5 (quoting *Estate of Sims v. County of Bureau*, 506 F.3d 509, 517 (7th Cir. 2007)).) Although this pleading standard is correct, Harris has not so pled. Harris has not indicated any party as a member of the conspiracy, only "Defendants" generally. It is not clear from paragraph 51 if the Government is included among "Defendants" for that particular claim. In fact, there is as much reason to believe the Government is not included, given that Harris needed to clarify at the outset of his Response that "[t]he constitutional claims in Plaintiff's [SAC] are directed at the [Defendant Officers], and not [the Government]." (Dkt. No. 89 at 2.) Moreover, Harris has not stated even the "general purpose" of the alleged conspiracy by referring to "an unlawful purpose by unlawful means." A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. An "unlawful purpose by unlawful means" is not a purpose, but a legal conclusion. Therefore, paragraphs 49 and 51 are dismissed as to the Government.

Finally, the Government argues that paragraphs 54 and 55 must be dismissed as they allege negligent infliction of emotional distress without alleging the "contemporaneous physical injury or impact" required by Illinois law. (Dkt. No. 85 ¶ 12 (citing *Barnes v. Anyanwu*, 391

---

[1] Harris asserts his argument in defense of paragraphs 49 and 51 but, without explanation, discusses only the pleading standard with particular respect to conspiracy. No conspiracy is alleged in paragraph 49.

F. App'x 549 (7th Cir. 2010)).) Harris responds that he "clearly alleged that he was injured by the actions of Defendant." (Dkt. No. 89 at 6.) Aside from the ambiguity associated with the term Defendant – when it has ostensibly applied to the Government at times in the SAC, but not at others – Harris does not cite any portion of the SAC to support his claim. In paragraph 55, Harris asserts that he suffered "pain and injury, including severe emotional distress," but does not allege that this was physical pain or physical impact. *See Barnes*, 391 F. App'x at 554 ("we reaffirm our holding that under Illinois law, a direct victim of negligent infliction of emotional distress must establish a contemporaneous physical injury or impact."). Therefore, these claims are dismissed.

*The Chicago Motion*

The City and Defendant Officers (collectively, "Chicago Defendants") move to dismiss all or part of the SAC on two different grounds: (1) that Harris's state law claims relating to his 2013 arrests are not properly before the Court and (2) that the SAC fails to sufficiently state a claim against the City or Defendant Officers.

As a preliminary matter, it is important to note that there is no dispute regarding Harris's Section 1983 allegations. Claims arising under § 1983 are subject to the same statute of limitations for personal injury actions of the state in which the alleged constitutional violations occurred. *Ray v. Maher*, 662 F.3d 770, 772-73 (7th Cir. 2011) (citing *Anderson v. Romero*, 42 F.3d 1121, 1124 (7th Cir. 1994)). In Illinois, the period is two years. 735 Ill. Comp. Stat. § 5/13-202 (2008). Harris's original Complaint was filed on November 29, 2013, and he does not contest that any Section 1983 claims based on the 2010 allegations are therefore time-barred. In contrast, any Section 1983 claim based on the 2013 allegations would still be timely if brought today. The Chicago Defendants do not contest this point and therefore concede that a

6

Section 1983 claim regarding the 2013 arrests could be timely brought today.

### Timeliness of the 2013 Arrest State Law Claims

The statute of limitations for Harris's state law claims is one year from the date of the injury. 745 Ill. Comp. Stat. 10/8-101(a). Harris concedes that the first time he raised his state law claims was in his First Amended Complaint, filed March 18, 2014, outside the one-year limitations period. However, Harris argues that his state law claims relate back to his original Complaint because "the amendment asserts a claim . . . that arose out of the . . . occurrence set out . . . in the original pleading." (Dkt. No. 90 at 12 (quoing Fed. R. Civ. P. 15(c)(1)(B)).)

The Chicago Defendants first argue that the claims relating to the alleged 2013 arrests do not, in fact, arise from the same occurrence.[2] But this argument is irrelevant in light of the untimeliness of Harris's original Complaint. Harris's original Complaint alleges only the 2010 violations. As set out above, Harris concedes that any Section 1983 or state law claims regarding the events of 2010 were untimely at the filing of the original Complaint on November 29, 2013. Therefore, the original Complaint was untimely in its entirety as to the Chicago Defendants and cannot "act as a life-line" for the SAC state law claims filed after the one-year statute of limitations. *Henderson v. Bolanda*, 253 F.3d 928, 932 (7th Cir. 2001) (collecting cases). Even if the state law claims were based on the same occurrence set forth in the original Complaint, the SAC cannot relate back. *Id*. These claims must be dismissed with prejudice.

---

[2] Defendants cite Harris's Response to the Chicago Defendants' first Motion to Dismiss (Dkt. No. 77), in which Harris states, "Plaintiff's claims against these two sets of defendants [i.e., the Government and the Chicago Defendants] do not arise out of the same transaction or occurrence, or series of transactions or occurrences, nor do they involve common questions of law, as required by Federal Rule of Civil Procedure 20(a)(2)."

## Failure to State a Claim

The Chicago Defendants argue, in the alternative, that Harris has failed to state a claim upon which relief can be granted. This argument is separated between the Defendant Officers and the City, and each is taken in turn.

The Defendant Officers first note that in order to properly bring a claim under Section 1983, Harris must allege that the Defendant Officers "personally participated in or caused the unconstitutional actions." (Dkt. No. 87 at 13 (citing *Alejo v. Heller*, 328 F.3d 930, 936 (7th Cir. 2003), *cert. denied*, 540 U.S. 1218 (2004)).) Harris asserts that he has so alleged by naming the Defendant Officers and "thereafter refer[ring] to them as the 'defendant CPD officers.'" (Dkt. No. 90 at 4.) More specifically, Harris uses the phrases "one or more of the Defendant CPD Officers" and "one or more of the Defendants." The Defendant Officers argue that these phrases do not put the individual officers on notice of which claims have been alleged against them. Indeed, each case Harris cites in support of the sufficiency of the SAC includes allegations against entire groups, not *one or more* of a group. *See, e.g., Smith v. Illinois*, No. 07 C 7048, 2009 WL 1515306, at *6 (N.D. Ill. May 27, 2009) (allegations made against both named officers provided sufficient notice to each); *Brooks v. Ross*, 578 F.3d 574, 582 (7th Cir. 2009) ("[Plaintiff] adequately pleads personal involvement, because he specifies that he is directing this allegation at *all of the defendants*." (emphasis added)). By alleging that all named defendants personally participated in an unconstitutional act, all defendants are put on notice of what they are expected to defend. Instead, each of Harris's claims leaves open the possibility that it applies to any number of the defendants. Harris has not sufficiently pled personal involvement with regard to any of his Section 1983 claims.

Additionally, the Defendant Officers argue that Harris's claims against the City merely state legal conclusions. A local government may be held liable when the injuries alleged are not caused "solely by its employees or agents," but in the execution of the government's "policy or custom." *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978). To successfully allege a claim against the City, Harris must "plead factual content that allows the court to draw the reasonable inference that the City maintained a policy, custom, or practice" that resulted in his injuries. *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir.2011) (internal quotation marks and citations omitted).

Harris asserts that "the bar for *Monell* theory is not high." (Dkt. No. 90 at 7.) But the cases on which Harris relies all allege at least some facts describing a policy, custom, or practice. *See Sanders v. Sheehan*, No. 09 C 7707, 2010 WL 2990121, at *3 (N.D. Ill. July 26, 2010) (plaintiff alleged city's personnel board customarily displayed bias in favor of city and against employees); *McCormick v. City of Chi.*, 230 F.3d 319, 322 (7th Cir. 2000) (plaintiff alleged "a widespread custom of allowing white police officers, in predominately white districts, to engage in individual acts of discrimination against African-Americans, without fear of vigorous and effective enforcement of City anti-discrimination policies."); *Stanfield v. Dart*, No. 10 C 6569, 2011 WL 1429172, at *4 (N.D. Ill. Apr. 14, 2011) (plaintiff alleged a pattern of sexual harassment, failure to respond to complaints, and retaliation against those who complain). Here, Harris's *Monell* claim alleges:

> a) as a matter of both policy and practice, the [Chicago Police Department ("CPD")] encourages, and is thereby the moving force behind, the very type of misconduct at issue here by failing to train, supervise and control its officers, such that its failure to do so manifests deliberate indifference; b) as a matter of both policy and practice, the CPD facilitates the very type of misconduct at issue here by failing to adequately punish and discipline prior instance[s] of similar misconduct, thereby leading CPD officers to believe their actions will never be

9

scrutinized and, in that way, directly encouraging future abuses such as those suffered by [Harris].

(SAC ¶ 57.) Harris has pled many of the terms required of a *Monell* claim, but absolutely no facts. Even in his Response, Harris simply asserts that "the misconduct of the Defendant [O]fficers as described in [the SAC] was undertaken pursuant to policies and practices put in place by [the City]." (Dkt. No. 90 at 8.) However, Harris nowhere alleges what is the policy or practice, only that the policy results in misconduct. Accordingly, Harris has not sufficiently pled a *Monell* claim.

Finally, Harris and the Chicago Defendants dispute whether the Government and the Chicago Defendants are properly joined, pursuant to Federal Rules of Civil Procedure 18 and 20. However, the parties were never joined pursuant to these rules. Should Harris at any point move to join parties, the issue of joinder will be addressed.

## CONCLUSION

For the foregoing reasons, the Government's Motion to Dismiss [85] is granted. Claims 40, 41, 43 (to the extent it alleges libel or slander), 44, 45, 46, 47, 48, 49, 50, 51, and 52 are dismissed with prejudice. Claims 54 and 55 are dismissed without prejudice. The Chicago Defendants' Motion to Dismiss [87] is granted with prejudice as to the state law claims and without prejudice as to the remaining claims. Harris may file a third amended complaint, if he can do so in a manner consistent with this Opinion and Rule 11, within thirty days of the entry of this Order.

Date:     January 22, 2015

JOHN W. DARRAH
United States District Court Judge