IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| DAVID HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | No. 13-cv-8584 |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | Hon. Judge John W. Darrah |
| OFFICER KARL KRUGER, OFFICER | ) | |
| MICHAEL CHERNIK, OFFICER JORGE | ) | |
| CERDA, OFFICER CORY PETRACCO, | ) | |
| OFFICER PAUL PERAINO, and the | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

## THIRD AMENDED COMPLAINT

Plaintiff, David Harris, by his attorneys, Loevy & Loevy, files this Second Amended Complaint against Defendants, the United States of America, Chicago Police Department Officer Karl Kruger, Officer Michael Chernik, Officer Jorge Cerda, Officer Cory Petracco, Officer Paul Peraino ("Defendant CPD Officers"), and the City of Chicago, and states as follows:

### Introduction

1. Plaintiff David Harris spent thirteen months detained at Cook County Jail for a crime that he did not commit.

2. Plaintiff's wrongful detainment was the direct and proximate result of the misconduct on the part of Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") agents of Defendant the United States.

3. After seeking redress for his wrongful detainment by filing a Federal Torts Claim Act claim with the ATF, Plaintiff was harassed and unlawfully arrested and detained by the Defendant CPD Officers.

4. Plaintiff brings this action seeking redress for the economic, physical, and mental injuries suffered as of a result of the Defendants' malicious and unlawful conduct.

## Jurisdiction and Venue

5. This Court has jurisdiction of the action pursuant to 28 U.S.C. §§ 1331, 1367, and 1346(b).

6. Pursuant to 28 U.S.C. § 2675(a) the claims set forth herein against Defendant United States were presented to the ATF on October 25, 2012.

7. The ATF denied these claims in writing on May 29, 2013.

8. Venue is proper under 28 U.S.C. § 1391 and pursuant to 28 U.S.C. § 1402(b). On information and belief, Defendants reside in this judicial district, and the events giving rise to the claims asserted herein occurred in this judicial district.

## Parties

9. Plaintiff, David Harris, is an adult resident of the State of Illinois.

10. At all times relevant hereto, Defendants Karl Kruger, Michael Chernik, Jorge Cerda, Cory Petracco, and Paul Peraino were officers of the CPD. At all times relevant hereto, Defendants Kruger, Chernik, Cerda, Petracco, and Peraino were employed by Defendant City of Chicago. On information and belief,

Defendants Kruger, Chernik, Cerda, Petracco, and Peraino are residents of the State of Illinois.

11. Defendant City of Chicago is a municipal corporation under the laws of the State of Illinois.

## Background

**ATF Investigation and Arrest:**

12. On October 27, 2010 Plaintiff was wrongfully charged with two counts of delivery of a controlled substance to an undercover ATF agent pursuant to 720 ILCS 570/402(c). Despite the fact that the ATF's own evidence in the case proved that Plaintiff was innocent, Plaintiff spent thirteen months in Cook County Jail for a crime he did not commit.

13. The charges against Plaintiff stemmed from an undercover ATF drug purchase from October 30, 2009 in which the ATF alleged that Plaintiff sold narcotics to ATF Special Agent Larissa Baccus and to a confidential informant who was working for the ATF (ATF Confidential Informant #772000-0600) (the "CI").

14. The October 30, 2009 undercover drug purchase was itself a part of a larger undercover ATF operation known as the "Walton Street Neighborhood Investigation" which involved multiple agents from the ATF's Chicago office, the Illinois State Police, and the Chicago Police Department, including the Defendant CPD officers.

15. According to the ATF, the alleged drug purchase between Plaintiff and Special Agent Baccus and the CI was captured by audio, video, and transmitting

3

devices hidden in the undercover ATF vehicle in which the drug purchase is alleged to have taken place. The audio, video, and transmitting devices in the undercover ATF vehicle were controlled on-the-scene by Special Agent Baccus and by ATF Special Agent Rotunno.

16. Special Agent Baccus and the CI were supervised in this undercover operation, including the October 30, 2009 drug purchase, by ATF Special Agents Rotunno, Kevin Cronin, and Andrew Traver.

17. For the purposes of the October 30, 2009 drug purchase, CPD Defendants Kruger, Chernik, Cerda, Petracco, and Peraino provided, among other duties, surveillance and back-up for Special Agent Baccus and the CI.

18. On information and belief, ATF Special Agents Ryan McBride, Andy Karceski, and Tony Heiserman also took part in the ATF operation described above, including the October 30, 2009 drug purchase.

19. On information and belief, Special Agent Baccus and the CI took part in a controlled drug purchase on October 30, 2009 pursuant to the undercover operation described above.

20. However, that drug purchase did not involve Plaintiff. In fact, the October 30, 2009 drug purchase was captured by the audio, video, and transmitting devices hidden in the undercover vehicle used during the drug purchase itself. This audio and video clearly shows that Plaintiff was not involved with this drug purchase whatsoever.

21. Indeed, even a cursory review of the audio and video of the undercover operation from inside the ATF vehicle used during the drug purchase demonstrates that the individual from which Special Agent Baccus and the CI purchased drugs was not Plaintiff.

22. Despite this clear audio and video evidence of Plaintiff's innocence, and despite the fact that the ATF had nearly an entire year to review this evidence prior to charging Plaintiff (the undercover operation took place on October 30, 2009 while Plaintiff was charged on October 27, 2010), Plaintiff was nevertheless wrongfully charged without cause with two counts of delivery of a controlled substance.

23. On information and belief, Plaintiff's public criminal defense counsel made repeated attempts to have the ATF agents involved in the investigation, as well as State prosecutors, review the video evidence so that Mr. Harris could be released, but to no avail.

24. On information and belief, the ATF agents involved in the investigation had access to both the videotape of the October 30, 2009 drug purchase, as well as to photographs of Plaintiff contained in his criminal record.

25. On information and belief, one or more of the ATF agents involved in the investigation reviewed both the videotape of the October 30, 2009 drug purchase, as well as Plaintiff's criminal record, and were therefore aware that Plaintiff was in no way involved in the drug purchase in question.

5

26. On information and belief, Special Agent Baccus was subpoenaed multiple times to provide testimony regarding the undercover investigation but failed to appear in court despite the subpoenas.

27. On information and belief, Special Rotunno provided testimony to the Grand Jury regarding Plaintiff that he knew, or should have known, to be false. Special Agent Rotunno also filled out and signed a criminal complaint against Plaintiff despite knowing that he did not have probable cause to do so.

28. On information and belief, Defendant United States, through the ATF, employed a CI in the course of the ATF's investigation that it knew to be unreliable. Defendant also allowed the CI to provide testimony to the Grand Jury it knew, or reasonably should have known, to be false.

29. All of the charges against Plaintiff were dismissed in a manner indicative of his innocence. However, as a result of the negligence and misconduct described above, Plaintiff spent approximately thirteen months unlawfully detained.

30. At all times relevant to the events at issue in this case, ATF Special Agents Baccus, Rotunno, Cronin, Traver, McBride, Karceski, and Heiserman, as well as ATF Confidential Informant #772000-0600, were employees of the ATF, an agency of the United States, and were acting within the scope of their employment.

**Harassment and Arrest by CPD:**

31. On October 25, 2012 Plaintiff filed an administrative claim with the ATF pursuant to the Federal Torts Claim Act regarding the ATF investigation described above.

32. On information and belief, at some point after filing his administrative claim with the ATF on October 25, 2012 the Defendant CPD Officers who had taken part in the ATF investigation that led to Plaintiff's unlawful detainment were made aware of the filing of that claim.

33. On information and belief, once being made aware of the filing of Plaintiff's administrative claim with the ATF, the Defendant CPD officers conspired with each other to threaten and harass Plaintiff so that he would withdraw his claim.

34. On or about January 31, 2013, while visiting a friend, Plaintiff was unlawfully arrested and detained by the Defendant CPD Officers.

35. One or more of the Defendant CPD Officers transported Plaintiff to the police station where he was placed in a holding room for approximately five hours.

36. When Plaintiff asked why he was being arrested and detained, one of the Defendant CPD Officers told Plaintiff that he was being arrested because they found a gun and various narcotics at the home of Plaintiff's friend. Plaintiff was never questioned while detained at the police station and was later released without being charged.

37. On information and belief, Defendants did not have a warrant to search the home of Plaintiff's friend. On information and belief, and in direct contradiction to their statements to Plaintiff, the CPD Defendants did not find a weapon of any kind, nor any narcotics, at the home of Plaintiff's friend.

38. On or about March 8, 2013, while visiting the same friend, Plaintiff was once again unlawfully arrested and detained by one or more of the Defendant CPD Officers. The Defendant CPD Officers gained access to the apartment where Plaintiff was located by using a shotgun to blast open the door. One or more of the Defendant CPD Officers also used flash grenades and/or "smoke bombs" upon entering the apartment.

39. On information and belief, the Defendant CPD Officers did not have a warrant to search the premises.

40. Upon arresting Plaintiff, the Defendant CPD Officers harassed and/or taunted Plaintiff about his ongoing claim against the ATF related to the ATF investigation that involved the Defendant CPD officers and led to Plaintiff's wrongful detainment.

## Legal Claims

41. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

42. Plaintiff asserts the following FTCA claims against Defendant United States of America, and Section 1983 and state law claims against Defendants Kruger, Chernik, Cerda, Petracco, Peraino, and Defendant City of Chicago.

43. As described more fully above, while acting individually, jointly, and in conspiracy, as well as under color of law and within the scope of their employment, Defendants deprived Plaintiff of his constitutional rights.

44. Defendants stood by without intervening to prevent the misconduct described herein. As a result of the Defendants' failure to intervene to prevent the violation of Plaintiff's constitutional rights, Plaintiff suffered pain and injury, as well as emotional distress. These Defendants had a reasonable opportunity to prevent this harm but failed to do so. Defendants' misconduct was objectively unreasonable and was undertaken with willful indifference to Plaintiff's constitutional rights.

45. The Defendants' misconduct caused Plaintiff to be maliciously prosecuted in a manner actionable under both federal and state law. Plaintiff was improperly subjected to judicial proceedings for which there was no legitimate probable cause or legal justification. These judicial proceedings were instituted maliciously, resulting in injury, and all such proceedings were terminated in a manner indicative of Plaintiff's innocence.

46. Defendants accused Plaintiff of criminal activity knowing that those accusations were without probable cause or legal justification. This misconduct was undertaken with malice, willfulness, and reckless indifference to the rights of others. As a result of this misconduct, Plaintiff suffered pain and injury, as well as emotional distress.

47. The Defendants' misconduct also caused Plaintiff to be detained without cause or legal justification. As described more fully above, the Defendants' misconduct caused Plaintiff to be unlawfully and unreasonably imprisoned without justification. This misconduct was undertaken with malice, willfulness, and reckless indifference to the rights of others. As a result of this misconduct, Plaintiff suffered pain and injury, as well as emotional distress.

48. The CPD Defendants conducted several unconstitutional searches and seizures of Plaintiff. More specifically, the CPD Defendants had neither warrants nor consent to search Plaintiff, yet continued extended and unreasonable searches of Plaintiff with no lawful purpose and with no legal justification. This misconduct was undertaken with malice, willfulness, and reckless indifference to the rights of others. As a result of this misconduct, Plaintiff suffered pain and injury, as well as emotional distress.

49. The CPD Defendants subjected Plaintiff to excessive force in violation of the Fourth Amendment. This misconduct was undertaken with malice, willfulness, and reckless indifference to the rights of others. As a result of this misconduct, Plaintiff suffered pain and injury, as well as emotional distress.

50. The CPD Defendants, while acting under color of law and within the scope of their employment, violated Plaintiff's rights to Due Process by tampering with evidence. Absent this misconduct, the above-described arrests and prosecutions of Plaintiff could not and would not have been pursued. This misconduct was undertaken with malice, willfulness, and reckless indifference to

the rights of others. As a result of this misconduct, Plaintiff suffered pain and injury, as well as emotional distress.

51. Plaintiff was arrested and imprisoned, and thereby had his liberty to move about unlawfully restrained, despite Defendants' knowledge that there was no probable cause for doing so. This misconduct was undertaken with malice, willfulness, and reckless indifference to the rights of others. As a result of this misconduct, Plaintiff suffered pain and injury, as well as emotional distress.

52. The CPD Defendants' conduct, acting under color of law and within the scope of their employment, constituted unjustified and offensive physical contact. This misconduct was undertaken with malice, willfulness, and reckless indifference to the rights of others. As a result of this misconduct, Plaintiff suffered pain and injury, as well as emotional distress.

53. The CPD Defendants knowingly acted in concert to deprive Plaintiff of his Constitutional rights. In furtherance of the conspiracy, the CPD Defendants committed overt acts of knowing retaliation against Plaintiff through the use of their police powers and otherwise were willful participants in joint activity with other state actors acting under color of law. Specifically, among other actions, the CPD Defendants conspired to threaten and harass Plaintiff by arresting him without cause on two separate occasions in order to intimidate Plaintiff into withdrawing his administrative claim filed with the ATF. This misconduct was undertaken with malice, willfulness, and reckless indifference to the rights of

others.  As a proximate result of this misconduct, Plaintiff suffered pain and injury, as well as emotional distress.

54.     The CPD Defendants, acting in concert with other known and unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means. In furtherance of the conspiracy, the CPD Defendants committed overt acts and were otherwise willful participants in joint activity.  Specifically, among other actions, the CPD Defendants conspired to threaten and harass Plaintiff by arresting him without cause on two separate occasions in order to intimidate Plaintiff into withdrawing his administrative claim filed with the ATF.  This misconduct was undertaken with malice, willfulness, and reckless indifference to the rights of others.  As a proximate result of this misconduct, Plaintiff suffered pain and injury, as well as emotional distress.

55.     The misconduct described above is a violation of Plaintiff's rights as secured by the Illinois Constitution.  Specifically, by falsely arresting, retaliating against, and inflicting bodily harm to Plaintiff, the CPD Defendants violated Plaintiff's inherent and inalienable right to life, liberty, and the pursuit of happiness under Article I, Section I of the Illinois Constitution.  The CPD Defendants also violated Plaintiff's right to be secure in his person against unreasonable searches, seizures, and invasions of privacy under Article I, Section 6 of the Illinois Constitution.  This misconduct was undertaken with malice, willfulness, and reckless indifference to the rights of others.  As a proximate result of this misconduct, Plaintiff suffered pain and injury, as well as emotional distress.

56. The acts and conduct of the ATF Defendants as set forth above were extreme and outrageous. The ATF Defendants either intended that their conduct would cause severe emotional distress to the Plaintiff or else knew that there was a high probability that their conduct would cause severe emotional distress to Plaintiff. The ATF Defendants' misconduct was undertaken with malice, willfulness, and reckless indifference to the rights of others. As a direct and proximate result of this misconduct, Plaintiff suffered pain and injury, including severe emotional distress.

57. Likewise, the acts and conduct of the CPD Defendants as set forth above were extreme and outrageous. The CPD Defendants either intended that their conduct would cause severe emotional distress to the Plaintiff or else knew that there was a high probability that their conduct would cause severe emotional distress to Plaintiff. The CPD Defendants' misconduct was undertaken with malice, willfulness, and reckless indifference to the rights of others. As a direct and proximate result of this misconduct, Plaintiff suffered pain and injury, including severe emotional distress.

58. In the alternative, the negligent acts of the ATF Defendants was a direct and proximate cause of Plaintiff's pain and injury, including severe emotional distress. Specifically, wrongfully detained for thirteen months, Plaintiff experienced physical danger on a daily basis, causing him severe emotional distress.

59. In the alternative, the negligent acts of the CPD Defendants was a direct and proximate cause of Plaintiff's pain and injury, including severe emotional

distress. Specifically, the CPD Defendants falsely arrested Plaintiff on two separate occasions, including entering the household where Plaintiff was located using a shotgun and stun grenades, placing Plaintiff in fear for his life and causing him severe emotional distress. The CPD Defendants also directly threatened and harassed Plaintiff about his claim with the ATF, including, among other actions, taunting Plaintiff and placing Plaintiff in a holding cell for five hours, causing Plaintiff to fear for his safety and to experience severe emotional distress.

60. The ATF Defendants owed a duty to Plaintiff and breached that duty. As a direct and proximate result of that breach, Plaintiff suffered pain and injury, including severe emotional distress.

61. The CPD Defendants owed a duty to Plaintiff and breached that duty. As a direct and proximate result of that breach, Plaintiff suffered pain and injury, including severe emotional distress.

62. As a direct or proximate result of one of more of the foregoing negligent acts or omissions by the ATF Defendants, including those by and through its agents and employees, Plaintiff suffered pain and injury, including severe emotional distress.

63. As a direct or proximate result of one of more of the foregoing negligent acts or omissions by the CPD Defendants, including those by and through its agents and employees, Plaintiff suffered pain and injury, including severe emotional distress.

64. The misconduct by the CPD Defendants described above in paragraphs 31 through 40, including, among other actions, falsely detaining, falsely arresting, threatening, harassing, and taunting Plaintiff in order to intimidate him into withdrawing his administrative claim with the ATF, was undertaken under the policy and practice of the Chicago Police Department in that: a) as a matter of both policy and practice, the CPD directly encourages, and is thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference to this misconduct; b) as a matter of both policy and practice, the CPD facilitates the very type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading CPD officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those suffered by Plaintiff.

65. At all times relevant to the events at issue in this case, ATF Special Agents Baccus, Rotunno, Cronin, Traver, McBride, Karceski, and Heiserman, as well as ATF Confidential Informant #772000-0600, were employees of the ATF, an agency of Defendant United States of America, acting at all relevant times within the scope of their employment, under color of law, and under circumstances where the United States, if a private person, would be liable to Plaintiff in accordance with the law of Illinois.

66. At all times relevant to the events at issue in this case, Defendants Kruger, Chernik, Cerda, Petracco, and Peraino were members of, and agents of, the

15

Chicago Police Department, acting at all relevant times within the scope of their employment and under color of law. Defendant City of Chicago is liable as a principal for all of the torts committed by its agents.

67. Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

WHEREFORE, Plaintiff, David Harris, respectfully requests that this Court enter judgment in his favor and against Defendant United States of America, and Defendants Officer Karl Kruger, Officer Michael Chernik, Officer Jorge Cerda, Officer Cory Petracco, Officer Paul Peraino, the City of Chicago, awarding compensatory damages, attorneys' fees, and costs, as well as any other relief this Court deems appropriate.

JURY DEMAND

Plaintiff, David Harris, hereby demands trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted,

/s/ Vincenzo Field
Attorneys for Plaintiff

Arthur Loevy
Jon Loevy
Michael Kanovitz
Vincenzo Field
LOEVY & LOEVY
312 N. May Street
Suite 100
Chicago, IL 60607
(312) 243-5900

**Certificate of Service**

      I, Vincenzo Field, an attorney, certify that on August 21, 2014 I cause the foregoing Second Amended Complaint to be served on all counsel of record via the Court's ECF system.

      Respectfully submitted,

      /s/ Vincenzo Field
      Attorneys for Plaintiff